[Cite as *State v. McLeod*, 2015-Ohio-93.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

     Plaintiff-Appellee

-vs-

YUSUF A. MCLEOD

     Defendant-Appellant

JUDGES:
Hon. John W. Wise, P. J.
Hon. Patricia A. Delaney, J.
Hon. Craig R. Baldwin, J.

Case No. 14 CA 53

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. 13 CR 433 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | January 12, 2015 |

APPEARANCES:

For Plaintiff-Appellee

KENNETH W. OSWALT
PROECUTING ATTORNEY
20 South Second Street
Fourth Floor
Newark, Ohio 43055

For Defendant-Appellant

WILLIAM T. CRAMER
470 Olde worthington Road
Suite 200
Westerville, Ohio 43082

*Wise, P. J.*

**{¶1}** Defendant-Appellant Yusuf McLeod appeals his June 5, 2014, sentence and conviction entered in the Licking County Court of Common Pleas on two counts of Burglary, two counts of Breaking and Entering, one count of Grand Theft and one count of Receiving Stolen Property following a jury trial.

**{¶2}** Appellee is the State of Ohio.

<u>STATEMENT OF THE CASE AND FACTS</u>

**{¶3}** As a result of his alleged involvement in two incidents of theft from buildings on the Denison University campus, Appellant Yusuf McLeod was charged with two counts of burglary, in violation of R.C. §2911.12(A)(1), both second degree felonies; two counts of breaking and entering, in violation of R.C. §2911.13(B), both fifth degree felonies; one count of receiving stolen property, in violation of R.C. §2913.51(A), which was a fifth degree felony under R.C. §2913.71 because the property was a credit card; and one count of grand theft, in violation of R.C. §2913.02(A)(1), a fourth degree felony.

**{¶4}** The undisputed facts are as follows:

**Wallet Theft**

**{¶5}** Maureen Harmon was the associate director of communications at Denison University and worked in the Burton Morgan office building. Harmon had an office with a door on the fourth floor of the building. The building houses various administrative staff, including advancement and career services, and occasionally hosts events. (T. at 110-113).

**{¶6}** On July 17, 2013, Harmon's credit card company alerted her to a number of suspicious purchases. Harmon checked her purse and found that her wallet was

missing. (T. at 114-115). Harmon remembered having her wallet with her at lunch that day. (T. at 117). Harmon testified that when she left her office, she typically left her door unlocked and ajar. (T. at 122-124). Sometime that day, a sales rep for Revol Wireless at the Indian Mound Mall in Licking County sold a phone to someone using the name Efrem Harris. The person provided a photo ID and used Harmon's credit card. The person came back fifteen minutes later and purchased another phone for his brother. The sales rep was 70% sure the person was Appellant. (T. at 157-164).

{¶7}   A worker at Aeropostale at the same mall also remembered Appellant purchasing some items that day. That worker stated that Appellant seemed suspicious because he asked the worker to pick out clothes for him and did not care about the price. The worker told her assistant manager about it afterwards. Later that night they received a call from the police that the credit card Appellant used had been stolen. (T. at 170-179).

{¶8}   The same day, someone also used Harmon's credit card to purchase jewelry from a stand at the mall. The clerk remembered that the purchaser was a black male, but could not positively identify that person as Appellant. (T. at 187-191).

{¶9}   Laura Frame worked on the fifth floor of Burton Morgan building. (T. at 125-126). Frame learned of Harmon's missing wallet, then heard of other thefts which occurred in the athletic building. Frame saw a surveillance photo of the suspect in the athletic building thefts and recognized the person as Appellant. Frame realized she had seen Appellant in their offices on the day Harmon's wallet was stolen, and he was asking for directions to the student activity center. (T. at 128-132).

{¶10} Betsy Russo also worked on the fifth floor of the Burton Morgan building. (T. at 138-139). Russo also saw a photo from the athletic building thefts and recognized the person as Appellant. Russo recalled that she had given Appellant directions on the day Harmon's wallet was stolen. (T. at 141-143).

{¶11} Matthew Hughes also worked in the Burton Morgan building. Hughes thought the person in the surveillance photos from the athletic building theft looked similar to a person he had seen around his building. Hughes saw the person walk by his office twice the day Harmon's wallet was stolen. Hughes was 80% sure the person was Appellant. (T. at 292-298).

**Athletic Facility Thefts**

{¶12} Steven Romine was the assistant supervisor at the Denison athletic facility. (T. at 196). In late July, the building was undergoing the final phase of remodeling. (T. at 203-204). Romine testified that there was construction going on with workers in and out. The workers mostly used the main entrance, but if they had big equipment, they would come through one of the delivery/garage doors. (T. at 215-216).

{¶13} Romine testified that there was a cheerleading camp using the athletic building Friday night, July 19, 2013. Romine stayed to supervise and lock up after they left, which was between 10:00 and 11:00 p.m. (T. at 208-210). When Romine came into work the next morning, he noticed items missing from his office, including a walkie-talkie radio. Romine reported the loss to security and did a walk-through of the building, but did not notice anything else missing. (T. at 206-207).

{¶14} Stuart Brown was the project manager for the construction on the athletic facility. Brown testified that he had keys to the interior building doors, but not the

exterior doors. Brown kept the keys hanging on the wall in their basement work area when they were not being used. (T. at 303-305, 309-310). Brown got a call about the thefts and went down to the facility to meet with some people. Brown checked for their keys, but could not find them. Brown testified that he left the keys hanging on the wall in the basement construction office on Friday night when he left. (T. at 305-306). The keys were never recovered. (T. at 310). Brown denied that Appellant worked for the construction company or any of their subcontractors in any capacity. (T. at 306).

{¶15} Steven Morrow was a janitor for Denison assigned to clean the common areas of buildings at night when the buildings are closed. On Friday, July 19th, Morrow arrived at work around 11:00 p.m. and was assigned to the athletic facility. Morrow saw Appellant in the aquatic area that night. Morrow testified that he assumed Appellant was a Denison employee because he had a Denison radio and a set of keys. Appellant asked Morrow if he knew of any events going on and Morrow told him only the cheerleading camp. The encounter was captured on surveillance cameras. (T. at 222-227). Morrow left the athletic facility after about three hours and moved on to other buildings. (T. at 227-228). Morrow was not suspicious that Appellant was in the athletic facility after hours because there was construction, and they had workers in during the week. Morrow stated that he had never seen Appellant before. (T. at 231-232).

{¶16} A secretary for the athletic department testified that she was missing some cameras, projectors, and tripods. (T. at 240). The secretary testified that their equipment is all tagged with a CSO number and sticker so that they can keep track of it for inventory purposes. (T. at 241-245).

{¶17} A Denison information security officer testified that they keep records of serial numbers of electronic equipment. (T. at 275). They conducted a post-theft inventory of equipment and created a spreadsheet showing what was missing with the serial numbers. (T. at 276-278).

{¶18} Denison ultimately reported that it was missing fifteen computers, six cameras, an iPad and an iPod. (T. at 267).

### Investigation

{¶19} The police published a still photograph of the suspect from the surveillance video. The photograph produced information that the suspect was Appellant, and Appellant had a tattoo that matched the suspect in the video. (T. at 256-258). The police located a car that was registered to Appellant. Officer King of the Granville Police assisted in searching the car.

{¶20} Officer King testified that while they were examining the car, Appellant walked up and said it was his car. Appellant gave them the keys so that they could search it. Inside the car they found three IDs on the front passenger seat in a wallet: two belonging to Appellant and one for someone named Efrem Harris. They also found the cologne that was purchased with the stolen credit card. Lastly, they found two video cameras that were traced back to Denison. (T. at 322-330).

{¶21} As a result of the investigation, Appellant was arrested by the Columbus police. Officer Dailey of the Granville Police testified that he picked Appellant up from the Columbus police in a grocery store parking lot. Dailey stated that the Columbus police provided a bag containing Appellant's belongings, which included three cellular

telephones, two of which had been purchased using Harmon's stolen credit card. (T. at 258-263). The police found pictures of Appellant on the phones. (T. at 354-355).

**{¶22}** Appellant testified in his own defense, denying that he was on campus on the July 17, 2013, or that he was ever in the Burton Morgan building. (T. at 420).

**{¶23}** At the conclusion of the trial, the jury found Appellant guilty as charged. At sentencing, the trial court merged the breaking and entering counts with the burglary counts and also merged the grand theft count with the corresponding burglary count. The trial court imposed a sentence of seven (7) years for each burglary count, to be served consecutively. The trial court also sentenced Appellant to one (1) year in the receiving stolen property count, to be served concurrently to the other sentences, for an aggregate sentence of fourteen (14) years.

**{¶24}** Appellant now appeals, assigning the following errors for review:

ASSIGNMENTS OF ERROR

**{¶25}** "I. APPELLANT'S DUE PROCESS RIGHTS UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BECAUSE HIS CONVICTION FOR BURGLARY IN COUNT ONE, AND THE FINDING OF GUILT OF BREAKING AND ENTERING ON COUNT TWO, WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

**{¶26}** "II. THE CONVICTION FOR BURGLARY IN COUNT ONE AND THE FINDING OF GUILT FOR BREAKING AND ENTERING IN COUNT TWO WERE NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE.

**{¶27}** "III. APPELLANT'S DUE PROCESS RIGHTS UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BY PROSECUTORIAL MISCONDUCT DURING THE CLOSING ARGUMENT."

I., II.

**{¶28}** In his First and Second Assignments of Error, Appellant argues that his convictions for burglary (Count 1) and breaking and entering (Count 2) were against the manifest weight and sufficiency of the evidence. We disagree.

**{¶29}** On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also*, *State v. Thompkins,* 78 Ohio St.3d 380, 1997–Ohio–52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

**{¶30}** We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990).

The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260. In addition, circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts." *State v. Fairbanks,* 32 Ohio St.2d 34 (1972), paragraph five of the syllabus. "[C]ircumstantial evidence may be more certain, satisfying and persuasive than direct evidence." *State v. Richey,* 64 Ohio St.3d 353, 1992-Ohio-44. It is to be given the same weight and deference as direct evidence. *Jenks, supra.*

**{¶31}** With regard to Counts 1 and 2, Appellant was convicted of burglary pursuant to R.C. §2911.12(A) and breaking and entering pursuant to R.C. §2911.13(B), which provide:

**{¶32}** R.C. §2911.12, Burglary:

**{¶33}** (A) No person, by force, stealth, or deception, shall do any of the following:

**{¶34}** (1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense;

**{¶35}** (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is

present or likely to be present, with purpose to commit in the habitation any criminal offense;

**{¶36}** (3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense.

**{¶37}** R.C. §2911.13, Breaking and Entering:

**{¶38}** (A) No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony.

**{¶39}** (B) No person shall trespass on the land or premises of another, with purpose to commit a felony.

**{¶40}** (C) Whoever violates this section is guilty of breaking and entering, a felony of the fifth degree.

**{¶41}** Criminal trespass, in turn, is defined in R.C. §2911.21(A) as,

**{¶42}** No person, without privilege to do so, shall do any of the following:

**{¶43}** (1) Knowingly enter or remain on the land or premises of another;

**{¶44}** (2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows the offender is in violation of any such restriction or is reckless in that regard;

**{¶45}** (3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication

to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access;

{¶46} (4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified by signage posted in a conspicuous place or otherwise being notified to do so by the owner or occupant, or the agent or servant of either.

{¶47} R.C. §2901.01(A)(12) defines "privilege" as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity."

{¶48} Appellant herein argues that the State failed to prove that he used "force, stealth, or deception" to gain access to the building or Harmon's office. Appellant admits that "walking into an open office and stealing a wallet from an unattended purse may be theft", such action "does not constitute burglary or breaking and entering absent actual evidence of stealth or deception." (Appellant's Brief at 11).

{¶49} With regard to the count of Breaking and Entering, we find that Appellant was not charged under subsection (A) but under (B) which does not contain the "by force, stealth or deception" element. We therefore find Appellant's arguments as they apply to the charge of breaking of entering to be not well-taken. Our remaining analysis will apply only to the burglary charge.

{¶50} "Force is defined in Section 2901.01(A)(1) of the Ohio Revised Code as 'any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.' "

{¶51} Under Ohio law, the opening of a door falls within the definition of force, even if the door if unlocked. *State v. Shirley,* 9th Dist. No. 20569, 2002 WL 5177 at *2 (Jan. 2, 2002); *State v. Hibbard,* 12th Dist. Nos. CA 2001–12–276, CA 2001–12,286, 2003–Ohio–707. Additionally, to further open a door which is already partially open is considered force. *Goins v. State* (1914), 90 Ohio St. 176; *State v. Stump*, Perry County, 5th Dist. App. No. 13-CA-0006, 2014-Ohio-1706

{¶52} The code defines "deception" as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. §2913.01(A)

{¶53} The Ohio Revised Code does not define "stealth." However, the most current version of the Ohio Jury Instructions gives the identical definition: " 'Stealth' means any secret or sly act to avoid discovery and to gain entrance into or to remain within a structure of another without permission." 2 CR Ohio Jury Instructions 511.13(A).

{¶54} This Court and other appellate courts of this state have used a definition that includes "remaining" on the premises as opposed to merely "entering" the premises. *See State v. Stone,* 5th Dist. No.1999 AP 030012, 1999 WL 1072199 (Nov. 10, 1999); *State v. Davis,* 1st Dist. No. C–010477, 2002–Ohio–1982; *State v. Patton,* 2d Dist. No. 2011 CA 94, 2013–Ohio–961 ¶ 14; *In re Predmore,* 3d Dist. Nos. 8–09–03, 8–09–04, 8–09–05, 2010–Ohio–1626, ¶ 44; *In re Carter,* 4th Dist. Nos. 04CA15, 04CA16, 2004–Ohio–7285, ¶ 24; *State v. DeBoe,* 6th Dist. No. H–02–057, 2004–Ohio–403, ¶ 66;

*In re J.M.,* 7th Dist. No. 12 JE 3, 2012–Ohio–5283, ¶ 15; *State v. Isom,* 8th Dist. No 78959, 2001 WL 1671432, *4 (Nov. 29, 2001); *State v. Trikilis,* 9th Dist. Nos. 04CA0096–M, 04CA0097–M, 2005–Ohio–4266, ¶ 31; *State v. Lane,* 50 Ohio App.2d 41, 47, 361 N.E.2d 535 (10th Dist.1976); *State v. Sims,* 11th Dist. No.2001–L–081, 2003–Ohio–324, ¶ 58; *State v. Lamberson,* 12th Dist. No. CA2000–04–012, 2001 WL 273806, (Mar. 19, 2001).

**{¶55}** Upon review of the testimony presented during trial, we find evidence of force, stealth and/or deception with regard to the theft of the wallet.

**{¶56}** We find the element of force was proven when Ms. Harmon testified that she only left her office door ajar which would have required Appellant to push the door open further to gain access to her office. (T. at 483).

**{¶57}** We find that the jury could have found that the element of stealth was proven by the evidence presented as to Appellant's actions in pretending to have been looking for the student center and asking for directions to the student center. *Id.* Alternatively, the jury could have found that Appellant's actions of walking back and forth down the hallway outside of Harmon's office on the fourth floor constituted stealth. (T. at 294-295). The jury could also have found that these same acts constituted "deception" as defined above.

**{¶58}** Accordingly, Appellant's convictions for burglary and breaking and entering were not against the manifest weight and sufficiency of the evidence.

**{¶59}** Appellant's First and Second Assignments of Error are denied.

III.

**{¶60}** In his Third and final Assignment of Error, Appellant claims that prosecutorial misconduct during closing arguments violated his Due Process rights. We disagree.

**{¶61}** As set forth above, Appellant herein claims misconduct because of statements made by the prosecutor during closing arguments. "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith,* 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "[T]he prosecution must avoid insinuations and assertions which are calculated to mislead the jury." *Id.* In cases of clear misconduct, a mere instruction that closing arguments are not evidence is insufficient to remedy the error. *Id.* at 15. A conviction will be reversed for prosecutorial misconduct only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. *State v. Benge,* 75 Ohio St.3d 136, 141, 661 N.E.2d 1019, 1996–Ohio–227. Furthermore, isolated comments by a prosecutor are not to be taken out of context and given their "most damaging meaning." *See Donnelly v. DeChristoforo* (1974), 416 U .S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431. Improper closing arguments must be viewed in the context of the entire trial. *Id.* at ¶ 168. Generally, a prosecutor's conduct at trial is not grounds for reversal unless that conduct deprives the defendant of a fair trial. *State v. Loza* (1994), 71 Ohio St.3d 61, 78, 641 N.E.2d 1082.

**{¶62}** At the end of the State's closing arguments, the prosecutor made the following statement:

**{¶63}** "So you either convict him on the first version, or, please, write down an apology and make sure you give it to him on his way out of the courtroom." (T. at 500).

**{¶64}** Appellant argues that the prosecutor was, in effect, telling the jury that if they decided to acquit Appellant, they should also find that he deserved an apology.

**{¶65}** We note Appellant failed to object to the aforesaid alleged instance of prosecutorial misconduct. Error not raised in the trial court must be plain error in order to reverse. *State v. Johnson* (Nov. 19, 1998), Richland App. No. 98–CA–42, 1998 WL 818026, citing *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Id.* Plain error does not exist unless but for the error, the outcome of the trial would clearly have been otherwise. *State v. Nicholas* (1993), 66 Ohio St.3d 431, 613 N.E.2d 225.

**{¶66}** Upon review of the record, we find that the prosecutor's remarks appear to be in response to Appellant's defense theory. As to the wallet theft, Appellant claimed that he was a victim of a misidentification. As to the thefts from the athletic center, Appellant claimed to have been duped or made into unwittingly participating in a crime.

**{¶67}** Upon review, even assuming arguendo, the remark was improper, we are unpersuaded that such would have prejudicially affected Appellant's substantial rights.

**{¶68}**   Appellant's Third Assignment of Error is denied.

**{¶69}**   For the foregoing reasons, the judgment of the Court of Common Pleas,

Licking County, Ohio, is affirmed.


By: Wise, P. J.

Delaney, J., and

Baldwin, J.,  concur.



JWW/d 1210