[Cite as *State v. King*, 2022-Ohio-4616.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,            : CASE NO. 21CA2

    v.                             :

EDWARD J. KING,                         : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.           :

_____

APPEARANCES:

Donald K. Pond, Akron, Ohio, for appellant.[1]

James Stanley, Meigs County Prosecuting Attorney, Pomeroy, Ohio, for appellee.
_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:12-16-22
ABELE, J.

{¶1} This is an appeal from a Meigs County Common Pleas Court judgment of conviction and sentence. A jury found Edward J. King, defendant below and appellant herein, guilty of breaking and entering in violation of R.C. 2911.13(A).

{¶2} Appellant assigns the following errors for review:

---

[1] Different counsel represented appellant during the trial court proceedings.

MEIGS, 21CA2

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO
DUE PROCESS OF LAW WHERE THE TRIAL COURT FOUND
APPELLANT GUILTY OF BREAKING AND ENTERING, IN
THE ABSENCE OF SUFFICIENT EVIDENCE, CONTRARY TO
THE FIFTH AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION, AND ARTICLE I,
SECTION 16, OF THE OHIO CONSTITUTION."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO
DUE PROCESS WHEN THE COURT ENTERED A JUDGMENT
OF CONVICTION FOR BREAKING AND ENTERING BECAUSE
THAT JUDGMENT WAS AGAINST THE MANIFEST WEIGHT
OF THE EVIDENCE, CONTRARY TO THE FIFTH AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION, AND ARTICLE I, SECTION 16, OF THE
OHIO CONSTITUTION."

THIRD ASSIGNMENT OF ERROR:

"DEFENSE COUNSEL WAS INEFFECTIVE AT TRIAL, AND,
THUS, APPELLANT SUFFERED A DEPRIVATION OF HIS
RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL,
PURSUANT TO THE SIXTH AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION AND ARTICLE
I, SECTION 10, OF THE OHIO CONSTITUTION."

{¶3} In August 2020, a Meigs County Grand Jury returned an indictment that charged appellant with one count of breaking and entering, in violation of R.C. 2911.13(A), a fifth-degree felony. Appellant pleaded not guilty.

{¶4} At the March 8 and 9, 2021 jury trial, Gary Shamblin described his property on State Route 143 he co-owns with Deborah

MEIGS, 21CA2

Adams: "There is a creek in front of it that gave us problems * * * and everything sits back about a hundred (100) yards." Shamblin stated that on his property sits a trailer, a camper, a couple of cars and trucks, "[m]ostly just junk over the years that I've gathered up." Shamblin lived at the property for 20 to 25 years, but moved six or seven years ago. His age, health, and the property's terrain now prevents him from visiting the property. Shamblin stated that appellant moved some items onto the property for him in "the early two thousands, I think. I don't remember." About ten years ago, when appellant's son and wife needed a place to live, Shamblin gave them an old trailer and an old truck. Later, Shamblin loaned a truck and trailer to appellant to haul vehicles. However, when Shamblin looked for his truck and trailer, "gone * * * gone. Cut up in pieces." Shamblin was "very unhappy" with appellant and told him, "if I ever catch him on my property again, I'd blow his head off."

{¶5} Shamblin's property has a cellar house with locked doors, a building with locked doors, and a box truck with all of the spaces full of possessions. When Shamblin last visited the property, he noticed broken locks on the truck and trailer, and the camper had two or three locks "all broke off of it." Shamblin did not, however, know who broke the locks or when it occurred. After

Shamblin moved away from the property, he returned "every six months or so," and last visited a year and a half ago.

{¶6} James Wooten, a co-defendant, lived a "couple hundred yards" from the property and he and Shamblin had been friends when Shamblin was his neighbor. Shamblin testified that on June 24, 2020, the Meigs County Sheriff's Department asked if he gave Wooten and appellant permission to "go on my property and take what they wanted." Shamblin responded that he gave no one permission to go onto his property to take anything.

{¶7} Deborah Adams purchased the State Route 143 property with Shamblin in 1992, and lived there together until Adams moved in 1999. Their 50-acres include a house trailer and a building (the cellar house) that sit approximately 300 feet from the road. A bridge once spanned the creek, but has since been washed away. Adams stated that, after you cross the creek, "[y]ou have to climb a 5-foot bank and hike up the driveway," about 250 feet from the creek. Approximately 90% of the cellar house contents belong to Adams and Shamblin stores personal property in all the structures.

{¶8} Adams had visited the property the previous week to see if raspberries had ripened, and she again visited on June 24, 2020 to pick raspberries. When Adams arrived, however, she observed a vehicle in her driveway, with windows down and keys in the

ignition, and could hear men talk and metal clang. Adams said she "didn't know exactly what was going on, but * * * had a pretty good idea." When Adams parked behind the unknown vehicle and noticed her neighbor in her driveway, she asked the neighbor to call the sheriff's department. Adams then waited for law enforcement to come to the property.

{¶9} After Meigs County Sheriff's Department Sergeant Frank Stewart arrived and prepared to cross the creek, appellant and Wooten "popped out of the weeds," climbed down the creek bank and came to Stewart and Adams. Appellant and Wooten said they had permission to be on the property, but when Adams said they did not, the men then said they knew Gary Shamblin but did not "know how to get ahold of him." At that point, Adams gave Shamblin's number to Stewart, who relayed the number to dispatch, to contact Shamblin. Stewart then asked Adams to inspect the buildings to see if anything had been disturbed.

{¶10} Adams explained that, although neither the trailer nor the cellar house door has a working lock, she kept both doors closed. Shamblin also keeps belongings in the cellar house, which has its own door, and Adams does not go into the cellar. In the past, Adams removed the padlocks on the trailer and the cellar house because she "wanted to see what was happening inside," but

prior to that particular day, Adams had not seen the downstairs cellar door open since 1999. That door also typically had a "big padlock," but Adams did not see the lock. Also, the cellar house upstairs door was closed, but the trailer door stood "open and there was stuff all in it [the doorway]. It couldn't have been closed without moving a bunch of stuff."

{¶11} Adams also observed toolboxes "in the driveway," "the cellar house door * * * standing open," and "a telescope on the front porch of the trailer that had not been there the previous week. * * * There was a bunch of stuff pulled out of [the box] truck that * * * hadn't been laying in the driveway." The box truck contained "a welding machine, tools, and junk and just everything." Typically, five-gallon buckets full of tools sat in the trailer, along with toolboxes, but "those buckets were all empty, or almost empty, and thrown around inside of the trailer." Two toolboxes that sat in the middle of the driveway had not been in that location the previous week. One toolbox sat open, the other latched, and leather gloves sat next to the toolboxes. Adams also took various photographs of the scene.

{¶12} After Adams returned to her car, another officer asked her to meet him at the Sheriff's Office. Adams stated that she did not give appellant or Wooten permission to be on the property, and

she had not seen them before that day.

{¶13} Sergeant Stewart testified that he observed two men through the trees near the buildings and appellant stood "in the doorway" of one structure. Adams told Stewart that she visited the property to pick raspberries when she observed the strange vehicle and heard the men. Adams also told Stewart that she heard "metal * * * that sounded like tools." At the point when Adams showed Stewart the best way to cross the creek, the two men walked down the hill. Stewart recognized appellant, but not Wooten. When Stewart asked what they were doing, Wooten said he had Shamblin's permission to be on the property, but appellant said nothing. Stewart then informed the men that both Shamblin and Adams own the property and asked Wooten if he had Shamblin's phone number. He replied he did not. After Adams gave Shamblin's number to Stewart and dispatch called Shamblin, Shamblin stated that he gave no one permission to be on his property. Once Stewart confirmed that neither man had permission to be on the property, he asked Adams to determine if anything was missing.

{¶14} At the close of the state's evidence, defense counsel made a Crim.R. 29 motion for judgment of acquittal. After consideration, the trial court denied the motion.

{¶15} Appellant testified that he "dealt with automobiles and

worked in junk yards pretty much all my life." Appellant knows
Wooten, is "somewhat" familiar with Gary Shamblin, "hauled a few
cars for him a few years ago," cut brush and performed other odd
jobs for him.

{¶16} Appellant stated that on June 24, 2020 he stopped at
Wooten's to "pick up an old mower and to see if he had gotten ahold
of Gary and he said he hadn't found his number yet, but we could go
down and look * * *." Appellant and Wooten had talked "about
trying to get ahold of [Shamblin] and buying some more cars."
Wooten drove to the property so appellant "could look at the
automobiles to see what was left of them." Appellant explained he
went to the property

> [t]o just see what was left of the automobiles that was
> sitting there since I had last been there, because there
> had been a lot of them that you could tell from the road,
> before it growed up, that you could see people had been
> there, things had been stripped off them because I wanted
> to see what was there so I knew what kind of price to tell
> [Wooten] what's all for Gary.

{¶17} Appellant testified he "walked around and looked at the
vehicles," stuck his head in the door of an old motor home, then
crossed the creek to look at an Oldsmobile, a Chevy Blazer, and a
Cadillac to see if the cars had radios or catalytic converters.
Appellant said he and Wooten did not try to be sneaky or quiet.

{¶18} Appellant also described the "cellar house" as a

MEIGS, 21CA2

sandstone cellar "pushed under the ground with like a one room building built on top of it and, uh, if you'd seen it, you'd understand, ain't no way I was crazy to go in it."  Appellant said he did not go into the cellar house, and that, "I wasn't there interested in anything other than junk cars.  That's the only thing there that basically could make any money off of."  Appellant testified he did not touch any tools, move any tools, enter the trailer, and that the box truck stood "wide open."  Appellant explained he found one toolbox "sitting there in the driveway, which was not far from the back of the box truck * * * sitting there when we got there."  Appellant said he did not touch it – "I've got my own tools.  I own a two car garage.  I wasn't there for tools."  Appellant also said when he looked at a truck "at the far end of the trailer," he heard the deputy and observed Adams.  Appellant explained he did not run because he "had no reason to," and "[j]ust walked on over to him."

{¶19} When asked if he had permission to be on the property, appellant replied, "[t]he best that I knew, I was.  You know, because we talked about the cars and * * * him and Gary had hung out a lot * * * all the years I've known him. * * * I wasn't there to steal nothing."  Later during the trial, when again asked the same question, appellant replied, "Uh, no I wasn't the one that got

Gary Shamblin's * * * not since I worked with him." When asked if he knew that Shamblin hated him, appellant replied, "Uh, no. That was my son that he hated." Also, appellant said he did not meet Adams until the date of the incident, that he knew Gary Shamblin would not be at the property that day, and that he did not stand "in the doorway of nothing."

{¶20} After hearing the evidence and counsels' arguments, the jury returned a guilty verdict. The trial court: (1) sentenced appellant to serve five years community control (with reserved underlying sentence of twelve months), (2) ordered appellant to pay $50 supervision fee per month while on community control, (3) ordered appellant to have no contact with the victims or the property, and (4) ordered appellant to pay costs of prosecution. This appeal followed.

I.

{¶21} In his first assignment of error, appellant asserts that insufficient evidence supports his conviction for breaking and entering, contrary to the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16, of the Ohio Constitution.

{¶22} In general, a claim of insufficient evidence invokes a due process concern and raises the question of whether the evidence

is legally sufficient to support the verdict as a matter of law. *State v. Schroeder*, 2019-Ohio-4136, 147 N.E.3d 1, ¶ 59 (4th Dist.), citing *State v. Blanton*, 2018-Ohio-1278, 110 N.E.3d 1, ¶ 13 (4th Dist.); *State v. Wickersham*, 4th Dist. Meigs No. 13CA10, 2015-Ohio-2756, ¶ 22; *State v. Benge,* 4th Dist. Adams No. 20CA1112, 2021-Ohio-152, ¶ 25; *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). When reviewing the evidence's sufficiency, the adequacy of the evidence is the focus; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *Thompkins*, syllabus. An appellate court's standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991); *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001).

**{¶23}** An assignment of error based on sufficiency of the evidence challenges the legal adequacy of the state's prima facie case, not its rational persuasiveness. *State v. Anderson*, 4th Dist. Highland No. 18CA14, 2019-Ohio-395, ¶ 13; *Benge* at ¶ 25.

Therefore, when an appellate court reviews a sufficiency of the evidence claim, the court must construe the evidence in a light most favorable to the prosecution. *State v. Dunn*, 4th Dist. Jackson No. 15CA1, 2017-Ohio-518, ¶ 13; *Wickersham, supra*, ¶ 23; *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *Benge, supra,* at ¶ 26. "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, 968 N.E.2d 27, ¶ 25 (1st Dist.); *State v. Bennett*, 2019-Ohio-4937, 149 N.E.3d 1045, ¶ 46 (3d Dist.).

**{¶24}** Furthermore, in reviewing sufficiency of the evidence claims, courts must remain mindful that the elements of an offense may be established by direct evidence, circumstantial evidence, or both. See *State v. Durr* (1991), 58 Ohio St.3d 86, 568 N.E.2d 674. Circumstantial and direct evidence are of equal evidentiary value. See Jenks, 61 Ohio St.3d at 272 ("Circumstantial evidence and direct evidence inherently possess the same probative value [and] in some instances certain facts can only be established by circumstantial evidence."). When reviewing the value of circumstantial evidence, "the weight accorded an inference is fact-

dependent and can be disregarded as speculative only if reasonable minds can come to the conclusion that the inference is not supported by the evidence." *Wesley v. The McAlpin Co.* (May 25, 1994) Hamilton App. No. C-930286.

**{¶25}** In the case sub judice, appellant first contends that, although the evidence adduced at trial reveals two men present on the property on June 24, 2020, appellee charged appellant as a principal offender and did not request a R.C. 2913.01(K)(4) complicity jury instruction. Appellant thus argues that the state failed to prove, beyond a reasonable doubt, that appellant was a principal offender.

**{¶26}** Appellee, however, asserts that the evidence adduced at trial did not warrant a complicity instruction because the facts revealed that appellant did, in fact, act as the principal offender. The state also argues that because appellant failed to renew his motion for judgment of acquittal at the close of appellant's case, he waived any error in the denial of that motion and the sufficiency of the evidence determination. Appellee points to *State v. Burton,* 4th Dist. Ross No. 06CA2892, 2007-Ohio-2320 when "[t]his court has previously held that a defendant who is tried before a jury and brings a Crim.R. 29(A) motion for acquittal at the close of the state's case waives any error in the denial of

the motion if the defendant puts on a defense and fails to renew the motion for acquittal at the close of all the evidence." *Id.* at ¶ 31, citing *State v. Swain,* 4th Dist. Ross No. 01CA2591, 2002 WL 146204 (Jan. 23, 2002), citing *State v. Miley*, 114 Ohio App.3d 738, 684 N.E.2d 102 (4th Dist.1996).

**{¶27}** Appellant acknowledges *Burton,* but contends that *State v. Shadoan,* 4th Dist. Adams No. 03CA764, 2004-Ohio-1756 held that a failure to renew a Crim.R. 29(A) motion at the close of all of the evidence does not waive the right on appeal to challenge the sufficiency of the evidence.

**{¶28}** Generally, courts have held over the years that a defendant who brings a Crim.R. 29(A) motion for judgment of acquittal at the close of the state's case waives any error in the denial of the motion if the defendant puts on a defense and fails to renew the motion at the close of all the evidence. *Swain, supra,* at *6; *Miley, supra.* See, also, *State v. Roe*, 41 Ohio St.3d 18, 25, 535 N.E.2d 1351 (1989); *State v. Hicks,* 4th Dist. Ross No. 2292, 1997 WL 802698 (Dec. 29, 1997). However, in *State v. Coe*, 153 Ohio App.3d 44, 2003-Ohio-2732, at ¶ 19 we wrote:

> We initially note that appellant failed to move for a Crim.R. 29(A) judgment of acquittal. In the past, this court and numerous other Ohio appellate courts, relying primarily upon *State v. Roe* (1989), 41 Ohio St.3d 18, 25, 535 N.E.2d 1351 and *Dayton v. Rogers* (1979), 60 Ohio St.2d 162, 163, 398 N.E.2d 781, have held that if a criminal

defendant fails to timely file a Crim.R. 29 motion for acquittal, the defendant waives any error, absent plain error, as to sufficiency of the evidence. In two apparently little-recognized cases, however, the Ohio Supreme Court stated that a failure to timely file a Crim.R. 29(A) motion during a jury trial does not waive an argument on appeal concerning the sufficiency of the evidence. See *State v. Jones (2001), 91 Ohio St.3d 335, 346, 744 N.E.2d 1163;* *State* v. Carter (1992) 64 Ohio St.3d 218, 223, 594 N.E.2d 595. In both *Jones* and *Carter*, the Ohio Supreme Court stated that the defendant's "not guilty" plea preserves his right to object to the alleged insufficiency of the evidence. Id. Moreover, because "`a conviction based on legally insufficient evidence constitutes a denial of due process,'" *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386-387, a conviction based upon insufficient evidence would almost always amount to plain error. See *State v. Hermann*, Erie App. No. E-01-039, 2002-Ohio-7307, ¶ 24; *State v. Casto*, Washington App. No. 01CA25, 2002-Ohio-6255; *State v. Arrowood* (Sept. 27, 1993), Pike App. No. 93CA05, at 6.

Thus, in the case sub judice, although appellant failed to request acquittal under Crim.R. 29 at the close of the evidence, appellant did not waive his sufficiency of the evidence challenge on appeal. Consequently, we will consider his argument that insufficient evidence supports his conviction.

{¶29} In the case at bar, the jury found appellant guilty of breaking and entering in violation of R.C. 2911.13(A): "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in 2913.01 of the Revised Code, or any felony." Appellant challenges whether the state presented sufficient evidence to establish that appellant trespassed by force, stealth, or

deception. For the trespass element of the offense, the state needs to prove "the insertion of any part of defendant's body" into the structure. *State v. Cuthbertson*, 1st Dist. Hamilton No. C-75362, 1976 WL 189781 (June 1, 1976), *5, quoting *State v. Harris*, 68 N.E.2d 403, 45 Ohio Law Abs. 598 (10th Dist.1943).

**{¶30}** "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "[A]ny effort physically exerted" satisfies the element of force. *State v. Johnson,* 2d Dist. Montgomery No. 26961, 2017-Ohio-5498, ¶ 21, quoting *State v. Snyder*, 192 Ohio App.3d 55, 2011-Ohio-175, 947 N.E.2d 1281, ¶ 18 (9th Dist.); *State v. Bertram*, 4th Dist. Scioto No. 21CA3950, 2022-Ohio-2488, ¶ 25. Opening a closed, but unlocked, door or window is sufficient to meet this requirement. *E.g., State v. Ball*, 2d Dist. Clark No. 2017-CA-54, 2018-Ohio-605, ¶ 15 (defendant's opening of closed but unlocked window sufficient to establish entry by force); *State v. Cantrell*, 2d Dist. Montgomery No. 26975, 2016-Ohio-7623, ¶ 12 (testimony that defendant opened screen door to walk through victim's open inner apartment door sufficient to prove force).

"Deception" is defined as

knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false

impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact.

R.C. 2913.01(A).

{¶31} Although the Ohio Revised Code does not define the word "stealth," courts have defined the term as "'any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission.'" *State v. Ward,* 85 Ohio App.3d 537, 540, 620 N.E.2d 168 (3d Dist.1993), quoting *State v. Lane*, 50 Ohio App.2d 41, 47, 361 N.E.2d 535 (10th Dist.1976); *Bertram*, *supra,* at ¶ 26. Evidence that a defendant entered through a back entry, secluded from view, can be sufficient to establish the element of stealth. *See State v. Pacific,* 2d Dist. Montgomery No. 28804, 2021-Ohio-973, citing *State v. Reeves,* 2d Dist. Montgomery No. 16987, 1999 WL 129469 (Mar. 12, 1999) at *6, citing *State v. Wohlfeil*, 8th Dist. Cuyahoga No. 51983, 1987 WL 9133 (Apr. 2, 1987); *State v. Johnson*, 2d Dist. Montgomery No. 26961, 2017-Ohio-5498, ¶ 19. Moreover, the fact that an incident occurs in broad daylight does not necessarily preclude evidence of stealth. *See, e.g., Johnson* at ¶ 20; *In re Markunes*, 2d Dist. Montgomery Nos. 15601 & 15617, 1996 WL 531586 (Sept. 20, 1996) (evidence of stealth exists when sufficient evidence that defendant's conduct could be construed as looking to see if "coast was clear" before entering open garage in broad daylight). In

*State v. McLeod*, 5th Dist. Licking No. 14CA53, 2015-Ohio-93, the

Fifth District considered the definition of "stealth" and held:

> This Court and other appellate courts of this state have used a definition that includes "remaining" on the premises as opposed to merely "entering" the premises. *See State v. Stone*, 5th Dist. No.1999 AP 030012, 1999 WL 1072199 (Nov. 10, 1999); *State v. Davis*, 1st Dist. No. C-010477, 2002-Ohio-1982; *State v. Patton*, 2d Dist. No.2011 CA 94, 2013-Ohio-961 ¶ 14; *In re Predmore*, 3d Dist. Nos. 8-09-03, 8-09-04, 8-09-05, 2010-Ohio-1626, ¶ 44; *In re Carter*, 4th Dist. Nos. 04CA15, 04CA16, 2004-Ohio-7285, ¶ 24; *State v. DeBoe,* 6th Dist. No. H-02-057, 2004-Ohio-403, ¶ 66; *In re J.M.*, 7th Dist. No. 12 JE 3, 2012-Ohio-5283, ¶ 15; *State v. Isom*, 8th Dist. No 78959, 2001 WL 1671432, *4 (Nov. 29, 2001); *State v. Trikilis*, 9th Dist. Nos. 04CA0096-M, 04CA0097-M, 2005-Ohio-4266, ¶ 31; *State v. Lane*, 50 Ohio App.2d 41, 47, 361 N.E.2d 535 (10th Dist.1976); *State v. Sims*, 11th Dist. No.2001-L-081, 2003-Ohio-324, ¶ 58; *State v. Lamberson*, 12th Dist. No. CA2000-04-012, 2001 WL 273806, (Mar. 19, 2001).

*Id.* at ¶ 54.

**{¶32}** In the case sub judice, both property owners testified

that appellant did not have permission to be on their property and

did not have permission to enter the trailer or cellar house, both

unoccupied structures. Further, property owner Deborah Adams

testified that she visited the property the previous week and found

the cellar house door closed, as it always was. However, on the

date in question, Adams found the cellar door open and items in the

trailer had "been dug through." Adams also testified about a

telescope on the porch that "wasn't on the porch before. You can

see that it is clean and whatever and everything else there that

has been outside is filthy." Adams also observed buckets of tools out of place from her previous visit and that the tools appeared to have been "gathered." Adams also testified about a toolbox "already packed up and ready to go at the top of the driveway." When Adams opened the toolbox, she noticed dry tools and a pile of dry, clean leather gloves "because * * * they [were] * * * just freshly dumped out."

{¶33} Sergeant Stewart testified that he observed appellant in the cellar house doorway. Although appellant insisted that he visited the property merely to look at junk cars, appellant acknowledged he did not believe Shamblin would be at the property. Also, Shamblin testified that he once told appellant, "if I ever catch him on my property again, I'd blow his head off."

{¶34} After our review, and in light of the evidence adduced at trial, it is difficult to conceive that the property owners would have welcomed appellant on their property for any reason. Further, multiple witnesses testified that the bridge no longer spanned the creek and most of the vehicles appellant claimed he wanted to inspect sat on the other side of the creek. The evidence also reveals that items of personal property had been examined and repositioned, apparently in preparation for removal.

{¶35} Therefore, after our review of the record in the case sub judice, we conclude that the state presented sufficient evidence that appellant trespassed on the victims' property by stealth. Here, the direct and circumstantial evidence adduced at trial, if believed by the trier of fact, established that appellant did trespass by stealth in an unoccupied structure with the purpose to commit a theft offense. We again emphasize that a trier of fact may choose to believe all, part, or none of the testimony of any witness who appears before it and, obviously, in the case at bar, the jury found the state's witnesses and the state's version of the facts more credible than the appellant's version of the facts.

{¶36} Accordingly, based upon the foregoing reasons we overrule appellant's first assignment of error.

II.

{¶37} In his second assignment of error, appellant asserts his breaking and entering conviction is against the manifest weight of the evidence, contrary to the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 16, of the Ohio Constitution.

{¶38} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable

inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that reversal of the conviction is necessary. *Thompkins*, 78 Ohio St.3d 380 at 387; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119; *State v. Smith,* 2020-Ohio-5316*,* 162 N.E.3d 898, ¶ 31 (4th Dist.). To satisfy this test, the state must introduce substantial evidence on all the elements of an offense so the jury can find guilt beyond a reasonable doubt. *State v. Setty*, 4th Dist. Adams No. 20CA1106, 2020-Ohio-4318, ¶ 17, *State v. Adams*, 2016-Ohio-7772, 84 N.E.3d 155, ¶ 22 (4th Dist.).

**{¶39}** Generally, the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Hoskins*, 4th Dist. Adams No. 19CA1093, 2019-Ohio-4842, ¶ 20, citing *State v. Frazier*, 73 Ohio St.3d 323, 339, 652 N.E.2d 1000, citing *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50. "We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility." *Id.*, citing *State v. Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 17; *State v. Wells*, 4th Dist. Lawrence No. 18CA23, 2019-Ohio-3799, ¶ 10-11; *State v. Smallwood,*

4th Dist. Highland No. 20CA1, 2021-Ohio-1103, ¶ 11.

**{¶40}** Thus, an appellate court may not reverse a conviction "when there is substantial evidence upon which the trial court could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt." *State v. Barnes*, 4th Dist. Ross No. 19CA3687, 2020-Ohio-3943, ¶ 18, citing *State v. Johnson*, 58 Ohio St.3d 40, 42, 567 N.E.2d 266 (1991); citing *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus (1988).

**{¶41}** In the case sub judice, the jury found appellant guilty of breaking and entering pursuant to R.C. 2911.13(A). Although appellant argued that he had permission to be on the victims' property, both victims testified that appellant did not, in fact, have permission to enter their property. Moreover (1) Sergeant Stewart testified he observed appellant standing in the cellar house doorway, and (2) Deborah Adams testified she noticed the cellar house door open that particular day when she had not seen it open since she lived at the property in 1999. Also, Adams testified that items of personal property had been moved apparently for the purpose of removal from the premises.

**{¶42}** " 'A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who

appears before it.' " *Reyes-Rosales*, *supra,* at ¶ 17, quoting *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. " ' "A verdict is not against the manifest weight of the evidence because the [jury] chose to believe the State's witnesses rather than the defendant's version of the events." ' " *State v. Missler*, 3d Dist. Hardin No. 6-14-06, 2015-Ohio-1076, ¶ 44, quoting *State v. Bean*, 9th Dist. Summit No. 26852, 2014-Ohio-908, ¶ 15, quoting *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Thus, courts should defer to the trier of fact on evidentiary weight and witness credibility issues. *State v. Koon*, 4th Dist. Hocking No. 15CA17, 2016-Ohio-416, ¶ 18; *State v. Hess,* 4th Dist. Meigs No. 20CA1, 2021-Ohio-1248, ¶ 16.

**{¶43}** Once again, in the case at bar the jury found the testimony of Shamblin, Adams and Sergeant Stewart more credible than appellant's testimony. Consequently, substantial evidence exists upon which this jury could have reasonably concluded that all elements of the offense have been proven beyond a reasonable doubt. The jury did not lose its way and create a manifest injustice.

**{¶44}** Accordingly, based upon the foregoing reasons we overrule appellant's second assignment of error.

III.

{¶45} In his third assignment of error, appellant asserts that his trial counsel was ineffective, and, thus, appellant suffered a deprivation of his right to effective assistance of counsel, pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10, of the Ohio Constitution. In particular, appellant contends that his counsel's failure to renew the Crim.R. 29(A) motion for judgment of acquittal constitutes deficient performance.

{¶46} The Sixth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution, provides that defendants in all criminal proceedings shall have the assistance of counsel for their defense. To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish deficient performance, a defendant must prove that counsel's performance fell below an objective level of reasonable representation. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. Additionally, a court need not analyze both Strickland test prongs if it can resolve the claim under one prong. *See State v.*

*Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000); *State v. Bowling*, 4th Dist. Jackson No. 19CA2, 2020-Ohio-813, ¶ 12-13.

{¶47} When a court examines whether counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689, 466 U.S. 668, 104 S.Ct. 2052. Moreover, because a properly licensed attorney is presumed to execute all duties ethically and competently, *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, to establish ineffectiveness, a defendant must demonstrate that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed * * * by the Sixth Amendment." *Strickland* at 687, 466 U.S. 668, 104 S.Ct. 2052.

{¶48} In the case sub judice, appellant argues that he established the first *Strickland* prong because, to the extent that *Burton* governs the case sub judice, appellant's counsel's failure to renew the motion for judgment of acquittal constituted deficient performance. Furthermore, appellant contends that, if he cannot challenge the sufficiency of the evidence on appeal, he has suffered prejudice, the second *Strickland* prong.

{¶49} In the case at bar we have determined that sufficient evidence supports appellant's conviction and his conviction is not

against the manifest weight of the evidence. Thus, we do not believe that appellant's trial counsel rendered ineffective assistance by failing to renew the motion for judgment of acquittal at the close of all the evidence. Had counsel renewed the motion, we believe the trial court would have overruled the motion because the evidence adduced at trial proved more than sufficient to sustain appellant's conviction. *See, Burton, supra,* 2007-Ohio-2320, at ¶ 37. Moreover, appellant did not have the ability to challenge on appealt evidence sufficiency. Thus, we conclude that appellant was not deprived of his right to effective assistance of counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10, of the Ohio Constitution.

**{¶50}** Accordingly, based upon the foregoing reasons we overrule appellant's final assignment of error and affirm the trial court's judgment.

                                    JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                              Peter B. Abele, Judge

NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.