[Cite as *State v. Billings*, 2024-Ohio-6000.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

STATE OF OHIO,

      Plaintiff-Appellee,

- vs -

MICHAEL T. BILLINGS,

      Defendant-Appellant.

CASE NO. 2024-A-0024

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2023 CR 00507

---

**O P I N I O N**

Decided: December 23, 2024
Judgment: Affirmed

---

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Christine Davis* and *M. Stanford,* Assistant Prosecutors, 25 West Jefferson Street, Ashtabula, OH 44047 (For Plaintiff-Appellee).

*Russell S. Bensing*, 600 IMG Building, 1360 East Ninth Street, Cleveland, OH 44114 (For Defendant-Appellant).

EUGENE A. LUCCI, P.J.

{¶1} Appellant, Michael T. Billings, appeals the imposition of consecutive sentences, ordered by the Ashtabula County Court of Common Pleas, after entering a plea of guilty to four counts of Illegal Use of a Minor in Nudity-Oriented Material or Performance, in violation of R.C. 2907.323(A)(1), felonies of the second degree. We affirm the trial court's sentence.

{¶2} In January 2023, the Ashtabula County Sheriff's Department received a report that a camera was found in the bedroom of a 14-year-old girl. Billings eventually

admitted he placed the camera in the teenage girl's bedroom and also admitted to photographing her since she was 10 years old. Billings admitted he possessed all the recordings on his home computer. He additionally conceded that, prior to placing the camera in the girl's bedroom, he had placed it in her bathroom. He also admitted to recording the initial victim's sister as well, another minor; he recorded each of the two minor victims in the shower.

{¶3} Billings admitted he had a problem and that, beyond the reported offenses, he had a significant amount of child pornography. During the investigation, officers recovered approximately 1,190 videos and 127,767 images of child pornography, including the videos and images of the two victims in this matter.

{¶4} In September 2023, Billings was indicted on 15 separate counts of sexual offenses: six counts of Voyeurism, felonies of the fifth degree, in violation of R.C. 2907.08(C); four counts of Illegal Use of a Minor or Impaired Person in Nudity-Oriented Material or Performance, felonies of the second degree, in violation of R.C. 2907.323(A)(1); and five counts of Pandering Sexually-Oriented Matter Involving a Minor, felonies of the second degree, in violation of R.C. 2907.322(A)(1).

{¶5} After consulting the victims and their representatives, the State and Billings entered into a plea wherein Billings would plead guilty to the four counts of Illegal Use of a Minor or Impaired Person in Nudity-Oriented Material or Performance, each felonies of the second degree. After a plea colloquy, during which the trial court established Billings was knowingly, voluntarily, and intelligently waiving his constitutional and non-constitutional rights, the trial court accepted the plea. The trial court nolled the remaining counts.

2

Case No. 2024-A-0024

{¶6} After conducting a sentencing hearing, at which various individuals spoke on Billings' behalf, the trial court sentenced him to serve six years on each of the four counts. The trial court ordered the terms to be served consecutively and, because the offenses were "qualifying offenses" under the Reagan Tokes Act, he was sentenced to a minimum 24-year term of imprisonment and a maximum, indefinite term of 27 years in prison. This appeal follows.

{¶7} Billings assigns the following as error:

{¶8} "The trial court erred in imposing consecutive sentences which were clearly and convincingly unsupported by the record."

{¶9} This court reviews felony sentences pursuant to R.C. 2953.08(G)(2). That subsection provides, in pertinent part:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division . . . (C)(4) of section 2929.14 [(regarding consecutive sentences)] . . . ;
>
> (b) That the sentence is otherwise contrary to law.

{¶10} Pursuant to R.C. 2929.14(C)(4), separate prison terms for multiple offenses may be ordered to be served consecutively if the court finds it is necessary to protect the public from future crime or to punish the offender; that consecutive sentences are not

3

disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and if the court also finds any of the factors in R.C. 2929.14(C)(4)(a)-(c) are present. Those factors include the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶11} In cases in which the trial court makes the appropriate findings to impose consecutive sentences, as it did in this case, this court's review of the record is limited to determine whether the record clearly and convincingly does not support the imposition of consecutive sentences. *State v. Gwynne*, 2023-Ohio-3851, ¶ 15 (plurality); R.C. 2953.08(G).

{¶12} With these standards in mind, on August 1, 2023, the Supreme Court of Ohio accepted discretionary review of a matter similar to the case at issue. *See State v. Glover*, 2023-Ohio-1153 (1st Dist.), *appeal allowed*, 2023-Ohio-2664.

{¶13} In *Glover*, the First Appellate District determined the record before it clearly and convincingly did not support the trial court's consecutive findings under R.C. 2929.14(C)(4). The trial court in *Glover* sentenced the defendant to an aggregate prison term of 60 years. *Id.* ¶ 32. The court ran the defendant's six aggravated-robbery terms

4

(seven years each) and each charge's firearm specification (three years each) consecutively. *Id* at ¶ 80. The First District concluded that the 60-year sentence was disproportionate to the defendant's criminal history and the danger he posed to the public. *Id.* at ¶ 102. The appellate court proceeded to modify the defendant's sentence downwardly from 60 years in prison to 25 years. *Id.* ¶ 106.

{¶14} The State of Ohio filed a jurisdictional appeal to the Supreme Court. In its memorandum in support, the State noted "[d]espite acknowledging that the trial court did in fact make the R.C. 2929.14(C)(4) findings required to impose consecutive sentences, the court of appeals gave undue consideration to the aggregate amount and misapplied the standard of review when it found that the record did not support it." *State v. Glover*, Ohio Supreme Court No. 2023-0654, State's Jurisdictional Memorandum, at p. 1. The State's memorandum noted that the Supreme Court's opinion on reconsideration of *State v. Gwynne*, 2022-Ohio-4607, had not been released at the time it submitted its jurisdictional filing. The appeal was accepted and oral argument was held on February 7, 2024. Prior to oral argument, on October 25, 2023, the high court released its opinion on reconsideration of *Gwynne*. In a plurality opinion, the court vacated its prior decision in 2022-Ohio-4607. *See Gwynne*, 2023-Ohio-3851.

{¶15} On November 1, 2024, the Supreme Court of Ohio released its opinion in *Glover*, 2024-Ohio-5195. The court summarized the State's propositions of law accordingly:

{¶16} "The . . . first proposition of law postulates that an appellate court should not 'focus on a defendant's aggregate prison term when . . . reviewing consecutive sentences.' The . . . second proposition of law states that a court of appeals may not

Case No. 2024-A-0024

'substitute its judgment for that of the trial court' when reviewing a sentence under the appellate-review statute." *Id.* at ¶ 41.

{¶17} The lead opinion, comprised of three justices, agreed with the State on both issues. With respect to the first proposition of law, the lead opinion determined that "[n]owhere does the appellate-review statute direct an appellate court to consider the defendant's aggregate sentence." *Id.* at ¶ 43. The lead opinion followed this conclusion with its observation that the First District's analysis was premised upon "its disagreement with the aggregate sentence." *Id.* The lead opinion emphasized "[t]o the extent that the court of appeals premised its holding on its disagreement with Glover's aggregate sentence rather than its review of the trial court's findings, it erred in doing so." *Id.* Accordingly, the lead opinion disposed of the State's second proposition of law. *Id.* at ¶ 44-47.

{¶18} The lead opinion next critiqued the court of appeals' application of R.C. 2953.08(G)(2), Ohio's appellate-review statute, and a fourth justice concurred in this portion of the lead opinion. The court observed that the First District based its decision on two findings that, in the appellate court's view, were clearly and convincingly not supported by the record. Namely, the trial court determined that consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger he poses to the public. *Glover*, 2024-Ohio-5195, at ¶ 48. And, the defendant's criminal history revealed a need to protect the public from future crime by the defendant. *Id.*

{¶19} The lead opinion pointed out that even though the appellate court took issue with the defendant's criminal history, it did not challenge the trial court's additional finding that the defendant's offenses were committed as "'part of one or more courses of

6

conduct.'" Accordingly, even without the trial court's criminal-history finding, the trial court's sentence satisfied the R.C. 2929.14(C)(4)(a) through (c) findings. *Glover* at ¶ 50.

{¶20} The lead opinion then considered the appellate court's evaluation of the trial court's proportionality determination. The Supreme Court criticized the appellate court's position that the lack of physical harm on any of the defendant's victims was significant. *Id.* at ¶ 55. The lead opinion determined that the court of appeals, in various ways, transcended its role under the appellate-review statute when it (1) noted the State initially offered the defendant 15 years in exchange for a plea of guilty; (2) inaccurately suggested the State advocated for concurrent sentences; and (3) compared the defendant's sentence to sentences imposed under statutes in other cases. *Id.* at ¶ 56-60.

{¶21} The lead opinion accordingly concluded the record did not clearly and convincingly fail to support the trial court's consecutive sentencing finding and therefore reinstated the trial court's sentence.

{¶22} One justice concurred in judgment and concurred in part with the lead opinion's analysis. *Id.* at ¶ 62 (Fischer, J.). In his concurring opinion, Justice Fischer determined that courts must necessarily review the aggregate prison term pursuant to the mandate of R.C. 2929.14(C)(4). *Glover*, 2024-Ohio-5195, at ¶ 68. He observed:

> [t]hat statutory provision requires courts to determine whether "consecutive sentences are not *disproportionate.*" (Emphasis added.) *Id.* This raises the question of how a court can determine whether consecutive sentences are not disproportionate (i.e., are proportionate) to the offender's conduct and the danger the offender poses to the public if the court does not know what the aggregate of all the terms would be. In my view, there must be a number involved to determine proportionality, and if a court does not consider the aggregate amount, then what number would the court consider?"

*Id.*

Case No. 2024-A-0024

**{¶23}** Justice Fischer therefore concluded he would reject the State's first proposition of law; he nevertheless agreed with the lead opinion's disposition of the State's second proposition of law and concurred with the disposition of the case based upon this agreement. *Id.* at ¶ 69-71.

**{¶24}** Finally, three justices dissented to the lead opinion. The three justices determined that the State's first proposition of law should be rejected. *Id.* at ¶ 75-82. The dissenting opinion also rejected the State's second proposition of law. *Id.* at ¶ 83-85. The dissenting opinion reiterated that its reasoning and conclusion in *Glover* was premised upon the reconsidered and subsequently vacated lead opinion in *State v. Gwynne*, 2022-Ohio-4607, commonly referred to as *Gwynne IV.*

**{¶25}** With the standards set forth in *Gwynne*, 2023-Ohio-3851 and *Glover*, 2024-Ohio-5195 in mind, we proceed to address Billings' arguments on appeal.

**{¶26}** Under his assignment of error, Billings concedes that the crimes to which he pleaded were serious. He also acknowledges that the victims have and will continue to experience anguish and psychological turmoil due to his criminal acts and his invasion of their privacy. He contends, however, that the 24- to 27-year sentence was clearly and convincingly unsupported by the record. He principally maintains the length of the prison term is disproportionate to the danger he poses to the public. Billings argues that the record does not support that he would recidivate and, therefore, the record does not demonstrate he would in any way pose a risk or a danger to the public. We do not agree.

**{¶27}** Initially, we emphasize the trial court made all the requisite statutory findings under R.C. 2929.14(C)(4), and Billings does not take issue with this point. As noted, however, Billings challenges the trial court's determination that the consecutive terms are

necessary to protect the public and not disproportionate to the danger he poses to the same. His argument therefore addresses the trial court's findings as they relate to the evidence and information in the record.

{¶28} Billings first argues that, prior to the offenses at issue, he was a law-abiding citizen for some 50 years. He points out that, other than minor traffic violations, he had no previous criminal record. In the abstract, Billings' claim is accurate. This court, however, cannot ignore Billings' admission to secretly photographing and recording videos of the minor victims for a period of years. Billings' admission demonstrates a pattern of criminal conduct against the victims well beyond the specific counts charged.

{¶29} Moreover, Billings downloaded over 120,000 photos of child pornography on his computer. The trial court could draw the reasonable inference that Billings did not accumulate these voluminous files immediately prior to being caught and charged with the underlying charges. It stands to reason, in other words, that Billings had been collecting the photos over a lengthy period of time.

{¶30} Simply because Billings was not charged with or convicted of a criminal offense prior to the instant matter does not imply he was living an otherwise "law-abiding" life. The amount of child pornography on his computer in conjunction with his admission that he had been photographing at least one of the victims for nearly four years renders Billings' argument unpersuasive.

{¶31} Next, Billings points out he scored low on his recidivism, risk-assessment test. We recognize Billings scored as a "low risk" to reoffend; the assessment, however, is merely a tool to assist the court in fashioning its sentence. While the low-risk score

9

militates in Billings' favor, it does not control the trial court's discretion in fashioning a sentence.

**{¶32}** This court has commented, albeit in the context of a "sexual-predator" determination, that "even a 'low risk' result from standardized testing does not preclude a sexual predator adjudication." (Citation omitted.) *State v. Burgan*, 2004-Ohio-6185, ¶ 27 (11th Dist.). This court emphasized that "'the psychological tests designed to indicate a sexual offender's propensity to reoffend, and the resulting risk level, must be objectively evaluated and not be blindly relied upon.'" *Burgan at* ¶ 27, quoting *State v. Purser*, 2003-Ohio-3345, ¶ 42 (8th Dist.). Even though these points related to a "sexual-predator" determination, they apply with equal force to a court's evaluation of a defendant's "low-risk" test assessment in the context of a general recidivism analysis. In short, no objective testing tool should be relied upon in a vacuum and must be considered in the context of the facts of the offenses under consideration.

**{¶33}** With this in mind, during Billings' allocution, he conceded what he did was "evil." He also stated, "my mind was telling me I wasn't hurting anyone, because I never touched anyone or no one knew." He further stated that he "just fell into something that [he] lost control of. Got out of hand." Even though Billings recognized how wrong his actions were, the trial court was within its discretion to view Billings' prior rationalizations as a basis for considering him a future threat to the public. Rationalizations are neither justifications nor reasonable explanations that might refute or weigh against the conclusion that a defendant poses a serious risk to the public such that consecutive sentences are not disproportionate to the defendant's conduct at issue.

10

{¶34} Furthermore, the trial court could reasonably conclude that Billings' actions are not activities which one "falls" into or matters outside of a reasonable person's control. The court could conclude that if Billings "fell into" the situation prompting the charges and could not stop himself, the situation could occur again thereby rendering him risk to the public.

{¶35} Similarly, Billings stated, "I got caught up in something I don't even know. I don't know where that came from and I don't know why I kept doing it." This observation suggests Billings acted upon an impulse the origin of which he still has no insight. Despite his apologies and assurances that he would never commit the acts at issue again, the trial court could reasonably see Billings' statement as a foundation that his impulses could manifest again. To wit, if he could not understand from whence the impulses issued or why he was unable to control them, they could arise anew and he could again lack the ability to control them. In this regard, the court could also reasonably conclude Billings represents a danger to the public and consecutive sentences are necessary to protect the same.

{¶36} In its appellate brief, the State draws this court's attention to a recent case with similar facts, *State v. Lautanen*, 2023-Ohio-1945 (11th Dist.). In *Lautanen*, the defendant had 15 pornographic images of two minor girls on his cell phone. *Id.* at ¶ 14-15. The pictures were sent to him by his wife, and the defendant downloaded the pictures on his phone then transferred the same to another phone. *Id.* at ¶ 32. The defendant was found guilty and convicted on all 15 counts of Illegal Use of a Minor or Impaired Person in Nudity-Oriented Material. *Id.* at ¶ 30. The defendant had one prior conviction for domestic violence and a pending charge for theft. *Id.* at ¶ 33. The trial court sentenced

11

the defendant to an indefinite term of 30 to 31 years (two years on each qualifying charge to be served consecutively). This court affirmed the trial court's sentence. *Id.* at ¶ 83-90.

{¶37} We recognize the proceedings in *Lautanen* were different than those in the case sub judice; namely, the defendant in *Lautanen* elected to proceed to jury trial on 15 counts of Illegal Use of a Minor or Impaired Person in Nudity-Oriented Material, and Billings pleaded guilty to four of 15 counts of the same charge. Still, the cases are somewhat similar in that each defendant had multiple pornographic pictures of underage females. A persuasive argument, however, can be made that the facts leading to the charges against Billings are more egregious.

{¶38} In *Lautanen*, the defendant did not take the pictures or have direct access to the minor females. Instead, the defendant passively received them from a third party. In contrast, Billings, over the course of several years, exploited his personal access to the minor victims and personally photographed and/or filmed them from their bathroom and bedroom. The sordid opportunism exhibited by Billings is different than the defendant in *Lautanen* and reasonably supports the trial court's determination that the sentence is necessary to protect the public from future crime Billings might commit and is not disproportionate to the danger he poses to the public.

{¶39} Considering the foregoing, the record does not clearly and convincingly fail to support the trial court's findings under R.C. 2929.14(C)(4). Put differently, "it does not overwhelmingly support a contrary result concerning the imposition of consecutive sentences." *Gwynne*, 2023-Ohio-3851, at ¶ 18.

{¶40} A final point requires attention. In *Glover,* 2024-Ohio-5195, four justices voted to reject the State's first proposition of law and four justices agreed with the State's

12

second proposition of law. It would therefore appear that trial courts (and appellate courts) must consider the aggregate term of imprisonment when imposing consecutive sentences under R.C. 2929.14(C)(4), but an appellate court may not substitute its judgment under the appellate standard of review.

{¶41} Because four justices in *Glover* seem to agree that an appellate court should consider or "focus" on a defendant's aggregate prison term when reviewing consecutive sentences (Fischer, J., Stewart, J., Donnelly, J., and Brunner, J.), we must somehow assess the aggregate term. In *State v. Jones*, 2020-Ohio-6729, ¶ 39, the Supreme Court of Ohio concluded that R.C. 2953.08(G)(2) does not permit a reviewing court to independently weigh the evidence and/or substitute its judgment for that of the trial court as it relates to individual sentences imposed pursuant to R.C. 2929.11 and R.C. 2929.12. Still, because four justices in *Glover* determined an appellate court should focus on the aggregate prison term when reviewing "stacked," individual sentences, this assessment would necessarily require the reviewing court to take into account (or evaluate) each individual sentence that contributes to the aggregate. An exercise which we, as an appellate court, are statutorily unable to do. It is accordingly unclear how an appellate court might have any substantive input on the aggregate term of imprisonment issued by a trial court. This is a conundrum. Without more guidance, it is therefore equally unclear what a reviewing court's role would involve other than to assess whether the trial court focused upon the aggregate term of imprisonment in the consecutive sentencing process.

{¶42} With this in mind, the transcript of the sentencing hearing demonstrates the trial court gave due consideration to the aggregate term of imprisonment it was imposing.

13

The trial court emphasized that the offenses were committed over a course of years, between 2020 and 2023. The offenses involved minor victims, and Billings used cameras in the victims' bathroom and bedroom to effectuate the crimes. The court also noted that Billings had a relationship with the victims' mother and, by implication, with the victims as well. In light of these points, the trial court sentenced Billings to six years on each count to be served consecutively with one another. We construe these observations sufficient consideration of the aggregate term ultimately imposed by the trial court. This court concludes the record does not clearly and convincingly fail to support the imposition of the aggregate terms of imprisonment, Billings' assignment of error is without merit.

{¶43} The judgment of the Ashtabula County Court of Common Pleas is affirmed.

MARY JANE TRAPP, J.,

MATT LYNCH, J.,

concur.

14