[Cite as *State v. Ison*, 2025-Ohio-3193.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2024-T-0094** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| CRAIG S. ISON, | |
| Defendant-Appellant. | Trial Court No. 2024 CR 00560 |

## OPINION AND JUDGMENT ENTRY

Decided: September 8, 2025
Judgment: Affirmed in part, reversed in part, and remanded

*Dennis Watkins*, Trumbull County Prosecutor, and *Charles L. Morrow*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*William C. Livingston*, Berkman, Gordon, Murray & Devan, 55 Public Square, Suite 2200, Cleveland, OH 44113 (For Defendant-Appellant).

SCOTT LYNCH, J.

{¶1} Defendant-appellant, Craig S. Ison, appeals his convictions and sentences in the Trumbull County Court of Common Pleas for Aggravated Robbery, Felonious Assault, and Trespass in a Habitation. For the following reasons, we affirm in part and reverse in part the judgment of the lower court and remand for the court to remove the violent offender classification from its sentencing entry and strike the violent offender notification from the record.

**Procedural Summary**

{¶2} On August 28, 2024, Ison was indicted by the Trumbull County Grand Jury

for Aggravated Robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(3); Felonious Assault, a felony of the second degree, in violation of R.C. 2903.11(A)(1); and Trespass in a Habitation, a felony of the fourth degree, in violation of R.C. 2911.12(B).

{¶3}    At a pre-trial hearing on September 19, 2024, defense counsel stated: "I don't believe [Ison] understands the nature of the charges." He indicated Ison had issues understanding the severity of the charges and the bond amount. Counsel indicated Ison had a history of counseling with Coleman Behavioral Services and requested leave to file a written request for a competency evaluation. Upon inquiry by the court, Ison indicated that he was bipolar. The court stated that it was not typically "inclined to grant a mental health evaluation just on the fact that [a defendant] can behave inappropriately." It reset the matter and asked defense counsel to "file your motion" and "see what kind of records you can get." The court indicated that if the defense introduced supporting records, it would order a competency evaluation.

{¶4}    At an October 3, 2024 pretrial, the prosecutor stated that he had spoken with defense counsel and, "after further reflection with his client, he's convinced that [a competency evaluation is] not an avenue that he wants to pursue." Prior to trial, on October 15, 2024, the prosecutor asked that the court put the abandonment of the competency request on the record. Defense counsel indicated he no longer had questions about Ison's competency and believed Ison "understands everything that's happened up until this point." At trial, the parties presented the following pertinent testimony:

**April 7, 2024 Incident**

{¶5}    Vicky Walker was in her residence on April 7, 2024, when she heard her granddaughter screaming that someone was in the house. She went into the living room

Case No. 2024-T-0094

and observed Ison, whom she did not know, with one hand on her granddaughter. Walker pointed a gun at him and she and her daughter began pushing him out of the house. During that time, Ison said he wanted to "save" the girls.

{¶6} Officer Dania Gillam responded to the residence. After speaking with the victims, Ison was located. Ison informed the officers that he saw the lights in the residence turned off and wanted to check on the children living there.

{¶7} Ison testified that he saw children's items in Walker's yard and believed there were children in an abandoned house. He approached the residence and, after entering an enclosed porch, encountered a child inside the house. He inquired about the child's parents and was asked to leave by an adult inside the home.

**July 11, 2024 Incident**

{¶8} On July 11, 2024, when Mary Hauger was entering the Huntington Bank Building in Warren, she heard an unknown male voice behind her cursing and she began to hurry inside. Ison threw her into the wall and she landed on the ground. Ison then punched her a couple times while she remained on the ground. She stated, "the whole time he was swearing and . . . saying 'money.'" She told him she would give him money and unzipped her purse. He grabbed a ten-dollar bill inside and also took a small amount of money from her wallet. Multiple officers responded and subsequently arrested Ison.

{¶9} Ison testified that he had believed Hauger was a woman he had known in the past, who went by a different name and owed him money. He testified that the woman began running from him and he chased her into the Huntington Building. Ison tried to grab her because he saw she was going to fall. He then asked her for the money she owed him. She gave him the money and he left. He denied punching her.

{¶10} The jury found Ison guilty of the counts alleged in the indictment. At the sentencing hearing, Hauger discussed the traumatic nature of the physical assault, indicating she broke her back three times, and psychological impacts. The State requested a lengthy sentence since the victims included an elderly woman and a child. Defense counsel requested that the sentences on the first two counts run concurrently since they involved one course of crime and one victim. The court ordered Ison to serve a sentence of ten to fifteen years for Aggravated Robbery, four years for Felonious Assault, and one year for Trespass in a Habitation. It ordered the sentences be served consecutively for a total term of fifteen to twenty years in prison.

{¶11} Ison timely appeals and raises the following assignments of error:

{¶12} "[1.] Appellant was denied his constitutional right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution when the trial court failed to conduct a competency hearing, resulting in prejudice.

{¶13} "[2.] The evidence at trial was insufficient to support Appellant's conviction on Count Three beyond a reasonable doubt in violation of his constitutional right to due process of law and trial by jury secured under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution and Criminal Rule 29.

{¶14} "[3.] The trial court committed plain error in failing to merge the guilty verdict on Count One with the guilty verdict on Count Two for purposes of sentencing in violation of R.C. 2941.25 and his constitutional right against double jeopardy secured by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of

the Ohio Constitution.

{¶15} "[4.] The trial court erred in imposing consecutive sentences on Appellant.

{¶16} "[5.] The trial court erred in sentencing Appellant as a qualifying violent offender and requiring him to enroll in a violent offender database."

**Competence to Stand Trial**

{¶17} In his first assignment of error, Ison argues that the trial court erred by failing to order a competency hearing after defense counsel indicated at the pretrial hearing that he did not believe Ison understood the nature of the charges against him.

{¶18} "Fundamental principles of due process require that a criminal defendant who is legally incompetent shall not be subjected to trial." *State v. Berry*, 72 Ohio St.3d 354, 359 (1995). To be competent to stand trial, a defendant must have a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). "[A] defendant is presumed to be competent to stand trial, and the burden is on the defendant to prove by a preponderance of the evidence that he is not." *State v. Neyland*, 2014-Ohio-1914, ¶ 32. A trial court's finding that a defendant is competent to stand trial is evaluated for an abuse of discretion. *State v. Jones*, 2024-Ohio-898, ¶ 13 (11th Dist.).

{¶19} "[T]he court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial" and, "[i]f the issue is raised before the trial has commenced, the court shall hold a hearing on the issue." R.C. 2945.37(B); *State v. Bock*, 28 Ohio St.3d 108, 109 (1986) ("where . . . competency to stand trial is raised prior to the trial, a competency hearing is mandatory"). However, "the failure to hold a mandatory

competency hearing is harmless error where the record fails to reveal sufficient indicia of incompetency." *Id.* at 110.

{¶20} "The right to a hearing on the issue of competency rises to the level of a constitutional guarantee where the record contains 'sufficient indicia of incompetence.'" (Citation omitted.) *Berry* at 359. Even where not requested by a defendant, a court should *sua sponte* refer a defendant for a competency evaluation if sufficient indicia exist. *State v. Bishop*, 2025-Ohio-1784, ¶ 15 (11th Dist.). The following factors have been considered as relevant to determine sufficient indicia of incompetency: "(1) doubts expressed by counsel as to defendant's competence; (2) evidence of irrational behavior; (3) the defendant's demeanor at trial; and (4) prior medical opinion relating to competence to stand trial." (Citations omitted.) *State v. Basile*, 2022-Ohio-3372, ¶ 28 (11th Dist.).

*"Raising" the Issue of Incompetence*

{¶21} First, we will consider whether the issue of Ison's incompetence was "raised" such that a mandatory hearing was required. As noted above, a trial court "shall hold a hearing" on the issue of competency "[i]f the issue is raised before the trial." R.C. 2945.37(B). The statute does not define the term "raised." "Raise" has been generally defined as: "[t]o bring up for discussion or consideration; to introduce or put forward." *Black's Law Dictionary* (12th Ed.2024).

{¶22} In the context of R.C. 2945.37(B), introducing the issue of a client's potential incompetence to the court with the intention for it to act upon such a request would appear sufficient, given the lack of any other statutory requirements. We recognize that a broader definition of raise could allow a comment such as, "I believe my client is competent to stand trial," to constitute "raising" the issue, which would be unworkable and contrary to

the purposes of the statute.

{¶23} Contrary to defense counsel's statement at the trial level that he would need to bring a written motion, the statute also does not provide a requirement that this issue be raised in a certain manner, such as through a written motion. "There is no apparent requirement for a formal motion, either oral or written, but merely that the issue be 'raised.'" *State v. Bass*, 2004-Ohio-2532, ¶ 6 (10th Dist.). *See also State v. Eckert*, 1991 WL 54151, *3 (11th Dist. Apr. 5, 1991) ("R.C. 2945.37 provides a presumption that if a defendant does not raise the issue of competency by motion, either oral or written, then the defendant is competent to stand trial"); *State v. Hinkston*, 2009-Ohio-2631, ¶ 6, 11 (4th Dist.) (where an oral request for a competency determination was made by counsel the morning of the trial, the trial court was required to hold a hearing).

{¶24} Courts have recognized that various types of requests to further examine a defendant's competency trigger the requirement for a competency hearing. For example, in *State v. Cullen*, 2024-Ohio-1916 (12th Dist.), the court found that the issue of competence "*was* raised before the trial court" when defense counsel inquired "'whether or not [the court] needs to maybe do some competency evaluations'" and rejected the dissent's claim that the issue was not raised because it was "informally mentioned." *Id.* at ¶ 55, citing *State v. Ashdown*, 2015-Ohio-1761, ¶ 24 (12th Dist.). *See also Bass* at ¶ 6 (a prosecutor's comments that appointed counsel spoke to him about a possible competency problem and that he "share[d] some of the competency concerns" were sufficient to raise the issue of competence under R.C. 2945.37).

{¶25} There has been some authority for the proposition that a party waives an objection to an error in failing to hold a competency hearing where defense counsel

informed the court that there is an "issue" regarding the defendant's competency but did not specifically request a hearing. *State v. Ford*, 2005-Ohio-2314, ¶ 5 (8th Dist.). However, we observe that the statute does not state that the parties must request a hearing but instead only that the court shall hold a hearing if the issue of the defendant's competence to stand trial is raised. R.C. 2945.37(B).

{¶26} Ison's counsel "raised" the issue of competency when he stated: "In speaking with Mr. Ison, regarding the nature of the case and the nature of the charges against him, it's clear that, I don't believe he understands the nature of the charges"; "I think it would be appropriate in this case to have a mental health professional take a look at him"; and "I know that generally I make a formal written request for a competency evaluation, so I would be asking the Court to allow me leave to do that. I do think it's appropriate in this matter." There was no question here that counsel clearly indicated he sought a competency evaluation, and, in the absence of any statutory requirement to take further action such as filing a written motion, this "raised" the issue to the court.

*Withdrawal of Competency Evaluation Request*

{¶27} While counsel initially raised issues of Ison's competence at the September 19, 2024 pretrial hearing, subsequent actions demonstrated the intention to withdraw this request. At an October 3, 2024 pretrial hearing, the prosecutor stated that defense counsel indicated, "after further reflection with his client, he's convinced that that's not an avenue he wants to pursue," in reference to examining Ison's "psychological issues." Prior to the beginning of trial, defense counsel indicated that "subsequent conversations [with Ison] clarify that I no longer had questions about his competency," and "based upon research and later conversations with [Ison], we didn't pursue that avenue." Courts have

Case No. 2024-T-0094

held that a competency hearing is only required "where the competency issue is raised and *maintained*." (Citations omitted.) (Emphasis added.) *State v. Kidd*, 2021-Ohio-3838, ¶ 51 (1st Dist.); *State v. McHargue*, 2024-Ohio-924, ¶ 14 (4th Dist.). For example, where a defendant withdrew a suggestion of incompetency filed by prior counsel and current trial counsel assured the court that the defendant was competent, the court did not err by accepting his waiver and not holding a competency hearing. *Kidd* at ¶ 52-53; *McHargue* at ¶ 17 ("[A] defendant may stipulate to the contents of the competency report and may also waive the competency hearing, or at least may elect not to introduce evidence. In such a situation, the presumption of competency remains unrebutted."). Defense counsel did not maintain the issue of competence here when the intention to no longer pursue this issue was placed on the record on two separate occasions prior to trial.

*Indicia of Incompetence*

{¶28} While recognizing that the failure to maintain a defense of competency constitutes waiver, it has also been acknowledged that, "once the issue [of competency] is raised, there may be situations where the defendant exhibits outward signs indicating the lack of competency that may necessitate a hearing regardless of any stipulation." *State v. Smith*, 2011-Ohio-2400, ¶ 5 (8th Dist.). As noted above, a court is required to sua sponte conduct a competency evaluation if there are sufficient indicia of incompetence. *Bishop*, 2025-Ohio-1784, at ¶ 15 (11th Dist.). Even presuming that the trial court should have held a hearing pursuant to Ison's initial request or investigated Ison's competency sua sponte, we do not find sufficient indicia of incompetence for reversible error. *Bock*, 28 Ohio St.3d at 110; *State v. Hough*, 2022-Ohio-4436, ¶ 28 ("[t]he failure to hold a competency hearing is harmless error where the defendant . . . participate[s] in the trial,

Case No. 2024-T-0094

offers his own testimony in defense and is subject to cross-examination, and the record fails to reveal sufficient indicia of incompetency") (citation omitted).

{¶29} As to the indicia, first, counsel made it clear that he did not believe Ison lacked competency and stated that he "understands everything that's happened up until this point." Defense counsel is positioned to evaluate his client's comprehension of proceedings. *State v. Lawson*, 2021-Ohio-3566, ¶ 62-64. Also, while at trial, the court did order that Ison not interrupt the proceedings following an "outburst," for the most part, it appears he did not otherwise act out. *See Basile* at ¶ 44-45 (outbursts expressing anger relating to court proceedings do not demonstrate incompetence). "Incompetency must not be equated with mere mental or emotional instability." (Citation omitted.) *State v. Zeigler*, 2024-Ohio-2953, ¶ 19 (11th Dist.). Finally, there was no evidence of a medical opinion of incompetence.

{¶30} While Ison argues that he informed the court of his "significant mental health diagnosis" prior to trial, mental illness alone does not render a defendant incompetent. *Berry,* 72 Ohio St.3d 354, at the syllabus ("'mental illness' does not necessarily equate with the definition of legal incompetency"). The record does not indicate that Ison's bipolar disorder rendered him incapable of understanding the proceedings or consulting with counsel. *See State v. Walker*, 2023-Ohio-140, ¶ 23 (6th Dist.) ("bipolar disorder, without more, did not trigger a duty . . . to request a competency exam").

{¶31} Ison also contends that other facts elicited at trial demonstrated incompetency, such as the police asking him if he was off of his medication, his misidentification of the victim, his conduct of trying to protect children he believed were abandoned, the prosecution's statements that the jury might be thinking "is this guy ok,"

and Ison's testimony being stopped because it was "rambling."

{¶32} While some of these arguments may demonstrate that Ison had mental health concerns or did not act in a conventional manner, that does not equate with incompetence to stand trial. "The test for competency focuses entirely on the defendant's ability to understand the meaning of the proceedings against him and his ability to assist in his own defense." (Citation omitted.) *Zeigler*, 2024-Ohio-2953, at ¶ 20 (11th Dist.). His testimony demonstrated that he understood his conduct was illegal and attempted to justify the conduct, such as his testimony that he prevented the victim from falling rather than pushed her and tried to enter the house to protect children who may be in danger. While these may not be successful legal defenses, they showed an understanding of the need to mitigate his conduct. While he "rambled" during some testimony, it was often to justify his behavior or explain inconsistencies, such as pointing out that he was not a threat to children since he had not harmed children previously or questioning the location of the blood on the victim. It is not uncommon for witnesses to give testimony beyond that sought by the questioner to explain their behavior. While Ison argues that those involved in the proceedings struggled to make sense of his "inability to answer basic questions," Ison was responsive to questions about his background, the date of the incidents, and described his conduct on those dates.

{¶33} Finally, to the extent that Ison argues that his actions in committing the criminal activity demonstrated incompetence, committing criminal acts alone does not render a defendant incompetent. *Bishop*, 2025-Ohio-1784, at ¶ 20 (11th Dist.). While his criminal conduct may have been odd, a defendant with mental or emotional instability can "still be capable of understanding the charges against him and of assisting his counsel."

Case No. 2024-T-0094

*Bock*, 28 Ohio St.3d at 110. The trial court "was in the best position to observe appellant's demeanor." *State v. Nickoson*, 2023-Ohio-3755, ¶ 18 (11th Dist.).

{¶34} The first assignment of error is without merit.

**Sufficiency of Evidence on Trespass in a Habitation Charge**

{¶35} In his second assignment of error, Ison argues that there was insufficient evidence to support the conviction for Trespass in a Habitation. A challenge to the sufficiency of the evidence raises the issue of "whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Clinton*, 2017-Ohio-9423, ¶ 165. In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. To convict Ison of Trespass in a Habitation, the State was required to prove, beyond a reasonable doubt, that he did "by force, stealth, or deception . . . trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender [was] present . . ." R.C. 2911.12(B).

{¶36} Ison's sole argument in this assignment of error is that the State failed to establish the stealth element of Trespass in a Habitation because he walked into the unlocked front door in broad daylight.

{¶37} Ohio courts have defined "stealth" in the context of improperly entering a residence as "any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission." (Citation omitted.) *State v. Bullard*, 2010-Ohio-3464, ¶ 23 (11th Dist.). There was sufficient evidence to

determine Ison entered by stealth. First, Walker testified that her daughter and granddaughter screamed that there was someone in the house, and her daughter asked Walker to get a gun. These statements imply surprise that Ison entered the house. There is a "nexus between the surprise" of victims seeing a defendant in their residence and "the manner and means by which they gained entrance." *State v. Butler*, 2011-Ohio-1233, ¶ 24 (8th Dist.). In such instances, it can be inferred that the defendant entered by stealth. *Id.* Further, Ison himself also testified that he was "peeking" in the windows before entry. Courts have held that "peeking into windows constitutes a sly act." *State v. Bolden*, 2016-Ohio-8488, ¶ 14 (8th Dist.). Further, Walker testified that she and her daughter pushed Ison out of the house to get him to leave. *See State v. Stewart*, 2006-Ohio-1071, ¶ 18 (8th Dist.) (considering in relation to stealth that a defendant refused to leave after being discovered).

{¶38} Further, we observe that the facts would have also supported a conclusion that Ison entered the residence by force. "Force" means "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). This court has held that the "force" element "'can be accomplished through the opening of a closed but unlocked door.'" (Citations omitted.) *State v. Nutt*, 2023-Ohio-1327, ¶ 29 (11th Dist.). Courts have further held this element is satisfied when the appellant "would have had to exert force to at least move the door, however slightly, to gain access through the doorway." *State v. Pearson*, 2015-Ohio-3974, ¶ 26 (10th Dist.); *State v. McLeod*, 2015-Ohio-93, ¶ 56 (5th Dist.). Ison testified that he approached the "porch area," i.e., the enclosed porch, and "opened the door." Such an area has been found to be part of a "habitation." *State v. Snyder*, 2011-Ohio-175, ¶ 20 (9th Dist.).

Although it is not entirely clear if the door was completely closed or ajar, there is no question from his testimony that he "opened" it in some manner.

{¶39} The second assignment of error is without merit.

**Merger of Aggravated Robbery and Felonious Assault**

{¶40} In his third assignment of error, Ison argues that it was error not to merge the offenses of Aggravated Robbery and Felonious Assault since the same evidence was used to demonstrate the commission of both offenses.

{¶41} Generally, courts apply a de novo standard of review to a trial court's merger decision. *State v. Lawrence*, 2023-Ohio-3419, ¶ 52 (11th Dist.). The State observes that Ison did not object to merger. Defense counsel argued at the sentencing hearing that counts one and two should run concurrently as they involved one course of crime and victim, but did not specifically mention merger. Where a defendant fails to object to merger, a plain error standard is applied. *State v. Rogers*, 2015-Ohio-2459, ¶ 28; Crim.R. 52(B). To prevail under a plain error standard, "an appellant must demonstrate that there was an obvious error in the proceedings and, but for the error, the outcome would have been otherwise." *State v. Lefkowitz*, 2022-Ohio-4052, ¶ 15 (11th Dist.).

{¶42} "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment . . . may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A); *State v. Whitfield*, 2010-Ohio-2, ¶ 17 ("[a] defendant may be indicted and tried for allied offenses, but may be sentenced on only one of the allied offenses"). "[C]ourts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were

Case No. 2024-T-0094

they committed with separate animus or motivation?" (Citations omitted.) *State v. Bailey*, 2022-Ohio-4407, ¶ 10. "An affirmative answer to any of [these] will permit separate convictions." *Id.*

{¶43} "[A] defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable harm from the harm of the other offense." *State v. Ruff*, 2015-Ohio-995, ¶ 26. This court has found separate harms for the purposes of merger of Felonious Assault and Aggravated Robbery where a defendant caused harm by physical injury as well as deprivation of property. *State v. Gambino*, 2022-Ohio-1554, ¶ 49 (11th Dist.). This court has also held that a separate animus may be found where the force used by a defendant is in excess of that necessary to accomplish a robbery. *State v. Stanley*, 2021-Ohio-108, ¶ 25 (11th Dist.); *State v. Williams*, 2013-Ohio-5076, ¶ 60 (11th Dist.). Here, we find similar circumstances apply. Ison knocked the victim to the ground, which appears was sufficient to accomplish the robbery as she did not attempt to escape at that point. However, he then proceeded to punch her. After causing physical harm, he then committed the separate harm of stealing her money. *State v. Sutton*, 2015-Ohio-4074 (8th Dist.), cited by Ison in support of the argument that there were not separate harms, also held that the offenses of Aggravated Robbery and Felonious Assault were committed with a separate animus, given that greater force than needed was used when the defendant struggled with then shot the victim, an act not necessary to complete the robbery. *Id.* at ¶ 62. Given the separate harms that occurred here and the excessive force used in committing the robbery, we do not find that merger was warranted.

{¶44} The third assignment of error is without merit.

Case No. 2024-T-0094

**Consecutive Sentence Findings**

{¶45}  In his fourth assignment of error, Ison raises several arguments in relation to the consecutive sentences issued here.  A trial court may order consecutive terms if it finds it is "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and finds any of the R.C. 2929.14(C)(4)(a)-(c) factors are present.  "To impose consecutive terms, the court 'is required to make the[se] finding[s] . . . at the sentencing hearing and incorporate its findings into its sentencing entry.'"  *State v. Elliott*, 2023-Ohio-412, ¶ 9 (11th Dist.), citing *State v. Bonnell*, 2014-Ohio-3177, ¶ 37.

{¶46}  First, Ison argues that the trial court "failed to make the required finding that the consecutive sentences would not be disproportionate to the risk of danger [he] posed to the community."  At the sentencing hearing, the court found "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct" but did not complete the phrase with "and to the danger the offender poses to the public," although it did so in the sentencing entry.  R.C. 2929.14(C)(4) necessitates a "complete finding." *State v. Campbell*, 2023-Ohio-4597, ¶ 13 (11th Dist.).  However, "[t]he trial court has no obligation . . . to engage in a 'word-for-word recitation' of the language in the statute or to set forth its reasons to support its findings, as long as they are discernible in the record."  (Citation omitted.)  *State v. Cozzone*, 2018-Ohio-2249, ¶ 27 (11th Dist.).

{¶47}  "This court . . . ha[s] found the proportionality requirement satisfied where the lower court did not specifically reference the danger the offender poses to the public but otherwise demonstrated that it considered proportionality through examination of facts

such as the defendant's past and current criminal conduct." *State v. Hiles*, 2025-Ohio-1119, ¶ 27 (11th Dist.), citing *Campbell* at ¶ 15 ("[a] trial court's proportionality analysis 'does not occur in a vacuum, but, instead, focuses upon the defendant's current conduct and whether this conduct, in conjunction with the defendant's past conduct, allows a finding" of proportionality) (citation omitted).

{¶48} The trial court noted Ison's "long criminal history," which included domestic violence, assault, aggravated harassment, violating a protection order, disorderly conduct, and drug offenses. As was the case in *Hiles* and *Campbell*, it is evident the court considered Ison's criminal history and acts involving "violence." It also recognized the circumstances of his crimes, specifically noting his conduct in attacking the victim and causing serious injuries. This demonstrated the court considered proportionality. *See State v. Scott*, 2025-Ohio-806, ¶ 36 (11th Dist.) (the proportionality finding was demonstrated by comments on the present offenses and past criminal conduct).

{¶49} Ison also argues that the court failed to make a R.C. 2929.14(C)(4)(b) finding that the harm caused was so great or unusual that a single prison term would not reflect the seriousness of his conduct, noting the overlap between this finding and the proportionality finding. As to the (a)-(c) findings, the court found both that Ison's conduct was "so severe that no single prison term would adequately reflect the seriousness of the conduct" and that Ison's "criminal history clearly demonstrates that due to the long history of violence, that it is necessary to protect the public." It appears, then, that it made both the (b) and (c) findings. Although it did not use the exact statutory language, this satisfied the requirement to make at least one of the (a)-(c) findings. The overlapping nature of some consecutive sentencing findings does not detract from the fact that the court satisfies

Case No. 2024-T-0094

the requirement to make the proportionality finding as outlined above.

**Imposition of Consecutive Sentences and Separate Sentences**

{¶50}   Ison next argues that the court erred by "imposing consecutive sentences prior to imposing a separate sentence for each individual offense," citing *State v. Saxon*, 2006-Ohio-1245, ¶ 9 ("[o]nly after the judge has imposed a separate prison term for each offense may the judge then consider in his discretion whether the offender should serve those terms concurrently or consecutively").

{¶51}   Ison cites no authority where a sentence was reversed because the trial court stated its consecutive sentencing findings prior to the terms to be served for each offense.  The language cited from *Saxon* was in the context of determining whether a lump or omnibus sentence is appropriate.  Immediately following the proposition cited by Ison, the court held "[u]nder the Ohio sentencing statutes, the judge lacks the authority to consider the offenses as a group and to impose only an omnibus sentence for the group of offenses."  *Saxon* does not appear to be about chronology of sentencing findings made at the sentencing hearing but instead the requirement that separate terms be given in order to impose consecutive sentences.  Courts have generally cited this proposition in *Saxon* when addressing and rejecting application of the sentencing-package doctrine, i.e., where a trial court considers sanctions imposed for multiple offenses as part of a single sentencing plan.  *State v. Polizzi*, 2019-Ohio-2505, ¶ 39 (11th Dist.); *State v. Price*, 2018-Ohio-2896, ¶ 17 (4th Dist.).

{¶52}   In the present matter, at the sentencing hearing, the trial court stated the consecutive sentencing findings, then stated the term for each individual offense, then found that all sentences were to be served consecutively.  There was no omnibus or lump

Case No. 2024-T-0094

sentence as distinct terms were issued for each of the three counts. We find no error in this regard.

**Support for Consecutive Sentences**

{¶53} Finally, Ison argues that the record did not support consecutive sentences because the offenses involved interrelated conduct and there was a lack of evidence of harm for the Trespass offense. We disagree.

{¶54} Ison's criminal history supported the conclusions that he was a danger to the community and at risk of reoffending. Further, there were facts in the record indicating multiple harms to Hauger and that the crimes had lasting impacts. Walker's testimony relating to the Trespass offense also indicated the fear experienced by her family when Ison entered their home. For these reasons, we do not find reversible error in the order to serve consecutive sentences.

{¶55} Ison also argues that the aggregate sentence was not properly considered and was inappropriate based on the facts of this case. This court has found that the trial court properly considered an aggregate term imposed when it outlined the conduct of the offenses involved and observed that they involved vulnerable victims and were committed as a course of conduct. *State v. Billings*, 2024-Ohio-6000, ¶ 42 (11th Dist.). Here, the court noted the harm to the victim, the violent acts by Ison, and the facts of the crimes committed in conjunction with other factors such as his criminal history. In the absence of any evidence to the contrary, we conclude that "the record does not clearly and convincingly fail to support the imposition of the aggregate terms of imprisonment." *Id.*

{¶56} The fourth assignment of error is without merit.

Case No. 2024-T-0094

**Violent Offender Finding**

{¶57}  In his fifth assignment of error, Ison argues that the court erred by ordering him to comply with statutory requirements for violent offenders when he was not convicted of a qualifying offense.  The State concedes the error.

{¶58}  R.C. 2903.41 through .44 provide certain procedures applied to "violent offenders," including enrolling in a violent offender database.  A "violent offender" is a person who is convicted of a "violation of section 2903.01, 2903.02, 2903.03, 2905.01 of the Revised Code" or a second-degree felony violation of R.C. 2905.02.  R.C. 2903.41(A)(1)(a).  These offenses are aggravated murder, murder, voluntary manslaughter, kidnapping, and abduction, none of which apply here.  The court erred in finding that Ison was a qualifying violent offender required to register in the database.

{¶59}  The remedy for this error is to remand for the trial court to issue a judgment entry removing/correcting such language.  *State v. Jackson*, 2022-Ohio-3449, ¶ 21 (1st Dist.) (remanding for the trial court "to delete the violent-offender classification from the sentencing entry"); *State v. Perry*, 2022-Ohio-3056, ¶ 6 (1st Dist.) (reversing the judgment as to the violent-offender classification and remanding "for the trial court to correct the sentencing entry nunc pro tunc in accordance with this opinion and the law").  As such, we reverse the trial court's judgment solely as to the violent-offender classification and remand for the trial court to correct its sentencing entry by removing the language that "The Defendant has been advised of his duty to register as a violent offender" and striking the notice of duties to enroll as a violent offender filed on October 30, 2024 from the record.

{¶60}  The fifth assignment of error is with merit.

{¶61}  For the foregoing reasons, Ison's convictions and sentences in the Trumbull

Case No. 2024-T-0094

County Court of Common Pleas are affirmed, the court's determination that Ison is subject to the violent-offender classification is reversed, and this matter is remanded for the court to correct its sentencing entry by removing the violent-offender classification and striking the notice of duties to enroll as a violent offender. Costs to be taxed against the parties equally.

ROBERT J. PATTON, P.J.,

MATT LYNCH, J.,

concur.

Case No. 2024-T-0094

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the first through fourth assignments of error are without merit. The fifth assignment of error is with merit. The order of this court is that Ison's convictions and sentences are affirmed, the court's determination that Ison is subject to the violent-offender classification is reversed, and this matter is remanded for the court to correct its sentencing entry by removing the violent-offender classification and striking the notice of duties to enroll as a violent offender.

Costs to be taxed against the parties equally.

JUDGE SCOTT LYNCH

PRESIDING JUDGE ROBERT J. PATTON,
concurs

JUDGE MATT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-T-0094